DARREN M. HARRIS, Bar No. 190399
**HARRIS GROMBCHEVSKY LLP**
2070 Business Center Drive, Suite 285
Irvine, California 92612
(949) 387-4444 Telephone
(949) 387-4544 Facsimile
dharris@lawfirmhg.com

Attorneys for Plaintiff, ARI AKI YOUNG

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARI AKI YOUNG, | CASE NO.  5:24-cv-592 |
| Plaintiff, | **COMPLAINT FOR DAMAGES:** |
| vs. | 1)  42 U.S.C. §1983 – (Unreasonable and Excessive Force) |
| SAN BERNARDINO COUNTY, a municipal entity; MICHAEL MARTINEZ, an individual; NICHOLAS COLLAS, an individual; and DOES 1 to 10, inclusive, | 2)  42 U.S.C. §1983 – (Racial Discrimination and Profiling) |
| Defendants. | 3)  42 U.S.C. §1981 – (Violation of Equal Protection Clause) |
| | 4)  42 U.S.C. §1983 – (*Monell* Claims – Municipal Liability) |
| | **SUPPLEMENTAL STATE CLAIMS** |
| | 5)  Assault & Battery<br>6)  Negligence |
| | **DEMAND FOR JURY TRIAL** |

1

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff ARI AKI YOUNG (hereinafter "ARI YOUNG" and/or "Plaintiff") alleges as follows under California and Federal law:

## I. JURISDICTION

1.      This case is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1342. The court also has pendent jurisdiction over the state claims, and supplemental jurisdiction over Defendants SAN BERNARDINO COUNTY (hereinafter "SBCO"), MICHAEL MARTINEZ (hereinafter "MARTINEZ"), NICHOLAS COLLAS (hereinafter "COLLAS"), and the Defendant Does 1-10 herein.

## II. VENUE

2.      The claims alleged herein arose in the County of San Bernardino, California. Venue lies in the Central District of California. 28 U.S.C. §1391(b)(2).

## III. PARTIES

3.      At all times herein mentioned, Plaintiff ARI YOUNG was a resident of the City of Victorville, County of San Bernardino and the State of California. Plaintiff is a 26 year old African-American male.

4.      Talona Young is the biological mother of ARI YOUNG.  Imani Young is the biological sister of ARI YOUNG.  At the time of this incident herein, Talona Young and Imani Young witnessed and/or perceived the incident as percipient witness bystanders.[1]

5.      At all times herein concerned, Defendant SBCO was a municipality and/or governmental entity operating under a Charter, organized and incorporated under the laws of the State of California, and located in the County of San Bernardino, State of California.  Defendant SBCO is liable through application of *respondeat superior* pursuant to §815.2 of the California Government Code for the

---

[1] Talona and Imani Young are currently appealing the San Bernardino County Superior Court's ruling denying their Petition for Relief from Government Code §945.4 in Case #CIVSB2324409.  See also, Court of Appeal, 4th Dist., Div 2 Case #E083023.  Depending on the outcome of this appeal, Talona and Imani intend to assert their own claims for emotional distress based upon California law.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

acts of its employees named herein who at all times alleged herein were acting in the course and scope of their employment with said public entity.

6.      Defendant MARTINEZ is and was, at all times relevant herein to the matters alleged in this complaint, a Deputy and employed by the Sheriff's Department of Defendant SBCO and was acting within the course and scope of his employment and was acting under color of law.

7.      Defendant COLLAS is and was, at all times relevant herein to the matters alleged in this complaint, a Deputy and employed by the Sheriff's Department of Defendant SBCO and was acting within the course and scope of his employment and was acting under color of law.

8.      At all times herein concerned, DOES 1 through 10 inclusive, were law enforcement officers, agents and/or servants and/or employees of the San Bernardino County Sheriff's Department and thus employees of Defendant SBCO. Said defendants were acting within the course and scope of their authority as such agents and/ or servants and/or employees, with the permission and consent of their co-defendants, and each of them.

9.      The true names and/or capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will amend this Complaint to state the true names and capacities when the same have been ascertained.

10.   Plaintiff is informed and believes, and upon such information and belief alleges, that each of the defendants, as well as those designated as a DOE is legally responsible in some manner for the events and happenings referred to, and legally caused injury and damages to the Plaintiff as hereinafter set forth.

## IV.  FACTUAL BACKGROUND

11.   On September 3, 2019, SBCO Sheriff's Department Deputy Starsun

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Fincel received a call for service at 13154 Cabazon Court, in the City of Victorville. The call was placed by Talona Young indicating her son (ARI YOUNG) was in psychiatric distress and that she needed help. Deputy Fincel arrived, took no action, and left despite Talona's pleas for help. The next day, ARI YOUNG was still in psychiatric distress and Talona Young called 911 again on September 4, 2019. Deputy Fincel, Defendant COLLAS, and Defendant MARTINEZ were having breakfast together approximately 2-3 miles away at the time and did not immediately respond to the call. Deputy Fincel heard the call to the Cabazon Court location and remembered being there the day prior.

12. Deputy Fincel sent SBCO Sheriff's Department Deputy Megan Forsberg detailed messages about the nature of the call the day before but Deputy Forsberg did not review Fincel's notes sent to her prior to arriving at the Cabazon Court location. When Deputy Forsberg arrived, she had no knowledge of the nature of the call.

13. Despite this, Forsberg approached the driveway and Talona Young exited the residence with a knife in her hand. ARI YOUNG came out behind his mother. Forsberg made contact with ARI YOUNG in the driveway. Immediately, Forsberg began to attempt to detain ARI YOUNG. To do this, Forsberg grabbed his arm and walked around to his back in an unlawful attempt to restrain and handcuff him. ARI YOUNG protested this unlawful detention and Forsberg pulled out her ASP (Baton). ARI YOUNG then grabbed the ASP and threw it away. Forsberg continued her forceful and illegal detention of him and pulled out her firearm. Forsberg threatened to shoot ARI YOUNG and tried to do so. Sensing Forsberg's panic and imminent use of unlawful deadly force, ARI YOUNG began to punch Forsberg repeatedly to protect himself. Forsberg and ARI YOUNG went to the ground. Forsberg again attempted to shoot him in the head but missed. ARI YOUNG, now on top of Ms. Forsberg was able to dislodge the gun from Ms. Forsberg.

14. ARI YOUNG then stood up and immediately moved backwards. He then pivoted to the left and walked straight ahead into the street and fired one round in a

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

<u>northeasterly</u> direction – away from Forsberg.  At no time was there any intent by ARI YOUNG to shoot Forsberg or anyone else.

15.  At the time ARI YOUNG got the gun from her hand, Ms. Forsberg ran immediately due <u>south</u> toward an area of safety she referred to as "cubby".   Mr. Young walked in the street in the opposite direction of Forsberg and never looked at her again.

16.  After ARI YOUNG walked into the street, the additional deputies started to arrive.  Fincel, COLLAS and MARTINEZ each arrived on scene in separate vehicles.  As the three vehicles approached, ARI YOUNG fired another round into the air.  His hands were up in the universal sign of surrender.

17.  Deputy COLLAS gave commands to ARI YOUNG to drop the gun.  MARTINEZ heard COLLAS give these commands.  ARI YOUNG complied with COLLAS's commands and began lowering his hand to drop the gun.

18.  Despite hearing COLLAS's commands to "drop the gun" and ARI YOUNG's attempt to comply, MARTINEZ got out and immediately started firing on ARI YOUNG from only 10-15 feet away.  MARTINEZ testified under oath as follows:

> *"Q.  Okay.  How much time do you think there was*
> *when you got out of your car and you heard*
> *Deputy Collas say "Drop the gun" until you shot?*
> *A.  Less than a second."*

19.  MARTINEZ also testified under oath:

> *"Q.  . . . when you get out of your vehicle, you*
> *didn't ask anything; correct?*
> *A.  That's correct.  I didn't give any commands.*
> *Q.  When you got out of the vehicle, you just shot;*
> *correct?*
> *A.  Yes."*

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

20.   At no point did ARI YOUNG ever point the gun at MARTINEZ or COLLAS or anyone else.

21.   On information and belief, MARTINEZ fired at least 11 rounds and COLLAS fired at least 7 times.  ARI YOUNG was struck at least 6 times.

22.   As ARI YOUNG lay in the street, approximately 20 seconds passed since the initial volley of shots and MARTINEZ fired another round – an execution shot – at ARI YOUNG's <u>back</u>, striking him near the base of his spine.

23.   The gun MARTINEZ used in the incident was his department issued weapon, but with a "trigger reset" modification which allowed MARTINEZ to fire multiple shot in succession "faster".

24.   As result of the incident, ARI YOUNG suffered severe and permanent injuries.

25.   On May 31, 2023 a jury empaneled in San Bernardino County Court Case #FVI19002410 found ARI YOUNG not guilty of several charges including attempted murder, assault with a firearm on police officer, and firearm enhancements.  Mr. Young was found guilty only of negligent discharge of a firearm.  The jury hung on the remaining charges including resisting arrest and battery with injury on a police officer.  On July 17, 2023, San Bernardino County Judge Miriam Morton dismissed all remaining criminal charges against Mr. Young.

**<u>Other Incidents and/or Misconduct Involving Deputy Michael Martinez:</u>**

26.   On <u>January 16, 2019</u>, several SBCO Sheriff's Department deputies responded to <u>a report of two black males</u> armed with guns in the City of Victorville. When the first-responding deputies made contact with the suspects, one of the suspects ran and one of the deputies broadcast the foot pursuit over the radio.  Other deputies arrived on scene and assisted with taking both suspects into custody. Defendant MARTINEZ was one of the deputies who arrived on scene in response to the call.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

27.   When one of the suspects was handcuffed and lying on his stomach, MARTINEZ kicked him near his head and shoulder area.  When it was clear that this suspect was handcuffed, lying face down, in custody, and not a threat to anyone, MARTINEZ nevertheless used unreasonable and excessive force by kicking him repeatedly.  Other than kicking, MARTINEZ made no effort to assist the other deputies in taking this suspect into custody.  MARTINEZ attempted more blows to this suspect but they were prevented by at least one female deputy at the scene.  After the suspect was handcuffed, this female deputy yelled at MARTINEZ to "Stop" and then tried to intervene to stop MARTINEZ from kicking any more.  After the suspect was detained in the rear of a patrol unit, this female deputy confronted MARTINEZ about his use of force.  In response, MARTINEZ told her to "Fuck off."

28.   Shortly after this incident, several of the deputies who responded at the scene, including MARTINEZ, discussed what to write and what not to write in each of their respective incident reports.  Specifically, they agreed not to discuss any use of force by other deputies (i.e., MARTINEZ).  It wasn't until the next day that one of these deputies came forward to actually discuss MARTINEZ's use of force – because this deputy was concerned that several citizens may have recorded the incident on their cell phones.

29.   On January 28, 2019, Sergeant Joshua Conley of the SBCO Sheriff's Department began an Administrative Investigation over MARTINEZ's use of force against one of the young black male suspects.  It was discovered that MARTINEZ did not activate his belt recorder during the incident.  However, an audio recording from one of the other deputies' belt recorders revealed that MARTINEZ kicked and/or attempted to kick the suspect approximately 10-12 seconds after the "clicking" of the handcuffs could be heard.

30.   On April 17, 2019, MARTINEZ sent a text message to another deputy about how he (MARTINEZ) had instructed another deputy not to document the force applied by other deputies in a use of force report and how it was an unwritten rule.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

31.   On or about <u>May 15, 2019</u>, SBCO received a written complaint by a civilian against MARTINEZ regarding excessive use of force.  There were also complaints of using pepper spray and being punched in the head while detained and on the ground.

32.   On <u>July 4, 2019</u>, MARTINEZ asked another SBCO Sheriff's Department from the Victorville station if he had any confiscated fireworks that MARTINEZ could take for his own personal use.  MARTINEZ was aware that Victorville station deputies commonly confiscated fireworks from citizens and then possessed them for their own use.  In fact, MARTINEZ himself previously acquired confiscated fireworks and ignited them at his own residence.  An investigation concluded that MARTINEZ violated SBCO Sheriff's Department Policy section 1.678 – Misconduct (The Department could be discredited if his request for confiscated fireworks became public).

33.   On <u>August 21, 2019</u>, the SBCO Sheriff's Department issued a written Order of Disciplinary Action to Martinez for his misconduct and actions in the January 16, 2019 excessive force incident.  SBCO proposed that MARTINEZ receive a "reduction in pay equivalent to ten (10) days suspension as a Deputy Sheriff with the San Bernardino County Sheriff's Department."  MARTINEZ was also ordered to complete use of force training, among other classes.

34.   On <u>August 29, 2019</u>, the SBCO Sheriff's Department served MARTINEZ with the Order of Disciplinary Action.  MARTINEZ acknowledged receiving this document on the same day.

35.   On <u>September 4, 2019</u>, MARTINEZ knowingly created a false Grand Theft Auto call for service and conducted a California Law Enforcement Telecommunications System (CLETS) inquiry on SBCO Sheriff's Department Deputy Starsun Fincel and also prepared a false Ramey warrant.  The following day, MARTINEZ gave the police incident, CLETS inquiry, and Ramey warrant to Sergeant Joshua Conley to present to the Victorville station deputies during briefing.

8

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

MARTINEZ and Conley knew these documents were false and that this type of conduct was against SBCO Sheriff's Department Policy section 2.522 – Use of Department Communications Systems and Networks.

36.     On <u>September 11, 2019</u>, MARTINEZ participated in a text exchange with another SBCO colleague.  The colleague asked MARTINEZ how he was coping after being involved in the September 4, 2019 incident where he shot Plaintiff YOUNG.  MARTINEZ replied:

> "*I'm good bro.  Got my homicide interview tomorrow with the rep.  I gotta articulate really 1 shot taken 17 seconds from the initial volley of shots.*"

The SBCO colleague sent a responsive text to MARTINEZ saying:

> "*Hahaha, I mean he was probably still on the ground moving and you thought he might still have the gun.  No one can say what you saw.*"

MARTINEZ continued by stating:

> "*Yep you know exactly what's up ☺ ☺ verbatim.*"

37.     MARTINEZ admitted that these text exchanges violated Department Policy section 1.678 – Misconduct, because he believed the Department could be discredited if his comments about the lethal use of force incident involving YOUNG became public.

38.     On <u>September 14, 2019</u>, MARTINEZ was involved in an incident for which he was disciplined for using excessive force against a Black male. MARTINEZ used his OC spray and his taser against this suspect.  After a formal SBCO investigation, MARTINEZ was notified that he would be suspended "for five (5) days as a Deputy Sheriff with the San Bernardino County Sheriff's Department." MARTINEZ was also ordered to complete use of force training.

9

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

39.   On June 5, 2020, MARTINEZ participated in a group text exchange with other SBCO colleagues about a group of protestors outside the Victorville station. This text message stated:

> "*Let's dress up in all black with masks and run up*
> *on the protestors.  Beat their ass and be GOA for*
> *P2's.  You know P2's won't do anything.*"

40.   MARTINEZ responded to this text by using the laughing feature on his phone.  MARTINEZ admitted that this text exchange violated Department Policy section 1.678 – Misconduct, because he believed the Department could be discredited if his text message became public.

41.   On June 15, 2020, MARTINEZ participated in a group text exchange with other SBCO colleagues with an image of a Gerber fixed blade with "VC-17" and an image of a shark etched into the blade.  MARTINEZ knew that the "VC" represented Victorville City and the "17" was the Victorville station identifier. MARTINEZ also knew that the shark was the unofficial mascot of the Victorville station.  MARTINEZ responded to this message by stating:

> "*Badass, can't get caught stabbing someone.*
> *Would be transferred to Baker, Mount Baldy,*
> *Trona, if someone found out.*"

42.   Another SBCO colleague sent the group another message stating that the cost of the knife was "88.00".  MARTINEZ knew that the "88" was in reference to the numeric code for "**Heil Hitler**".

43.   MARTINEZ admitted that this text exchange violated Department Policy section 1.678 – Misconduct, because he believed the Department could be discredited if his text messages about the knife became public.

44.   On June 19, 2020, MARTINEZ sent the group a text message asking what they had planned for the Independence Day holiday.  One of the deputies said

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

he planned to upset his neighbors with confiscated fireworks.  MARTINEZ stated, "*I've got a brown bag full of em haha*" – referring to confiscated fireworks he received from another deputy.

45.    On <u>July 20, 2020</u>, MARTINEZ sent a text message to another deputy after MARTINEZ responded to a call for service and his belt recording captured a juvenile screaming in agony when MARTINEZ detained the juvenile.  MARTINEZ believed his contact with the juveniles sounded poorly and could result in administrative discipline.  MARTINEZ asked the deputy how to get rid of the audio recording.  Another deputy talked MARTINEZ out of disposing of the audio recording.

46.    On <u>October 27, 2020</u>, MARTINEZ sent a video to another deputy of a while male who was bleeding from an apparent head injury.  MARTINEZ asked him to say "Hell yeah brother", because MARTINEZ knew a former Victorville station member used that phrase as a joke.  After this victim used blood to fingerpaint on a patrol vehicle, MARTINEZ sent another text message stating:

> "*Like bro 4 years ago I would've taken a 663/187*
> *dr if I crosses paths with this guy like that.  Now*
> *we are having people finger paint with the blood*
> *from their cracked skull ☺☺.*"

47.    On <u>December 24, 2020</u>, MARTINEZ sent the group a photograph of a homicide victim with an apparent gunshot wound to the head.  MARTINEZ admitted that he believed the victim's family would disapprove of him disseminating this image.  MARTINEZ admitted that this text exchange violated Department Policy section 1.678 – Misconduct, because he believed the Department could be discredited if his text messages about the photo became public.  MARTINEZ admitted that this text exchange also violated Department Policy section 1.760.25 – Recording or Distribution of Department Actions, when he disseminated the photograph of the

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

homicide victim to deputies in the group thread.

48.     On <u>January 10, 2021</u>, MARTINEZ sent the group a meme of a Black adult male with a caption which read:

> "*HIDE YO PARENTS HIDE YO*
> *GRANDPARENTS CAUSE VICTORVILLE PD*
> *SHOOTIN EVERYONE'S GRAM GRAMS OUT*
> *HERE*."

49.     MARTINEZ sent this meme in reference to a recent incident involving a Victorville deputy shooting a deaf and blind person.  MARTINEZ said he believed the family of the victim would disapprove of the meme and would be offended, but MARTINEZ sent the group the meme because he thought the group would find it humorous.

50.     On <u>June 10, 2021</u>, MARTINEZ sent the group a video of himself driving to work a patrol shift at the Morongo Basin station.  This was shortly after an SBCO deputy was involved in a lethal force incident.  On of the deputies responded to MARTINEZ's message, stating "*I bet you guys shoot someone tonight.*"  Another deputy responded, stating "*Morongo always shoots people.  Morongo coupled with VC deps equals justified homicide.*"

51.     On <u>June 16, 2021</u>, SBCO Sheriff Deputy Corie Smith was caught on video assaulting a Black male suspect by twice kicking him in the head after the suspect had surrendered to Smith.  On information and belief, Deputy Corie Smith was one of the members of the group with whom MARTINEZ was texting and sending inappropriate photos/videos.

52.     The conduct of MARTINEZ, both before, during, and after the incident involving ARI YOUNG, demonstrates a racial animus and bias against Black individuals.  The text messages, pictures, words, and overall conduct of MARTINEZ clearly show a discriminatory motive towards ARI YOUNG and other Black

individuals within the community.

53.     On information and belief, Plaintiff alleges that there have been numerous other incidents involving SBCO deputies and officers using excessive, unreasonable, and unnecessary force against Black individuals within the community. However, SBCO has permitted a racially hostile environment to persist, and has failed to adequately train, supervise, and discipline its deputies so as to allow said environment to continue – all to the detriment of persons like ARI YOUNG and other Black individuals.

54.     The widespread abuse by MARTINEZ, as well as others within SBCO Sheriff's Department highlights a pattern and practice of discriminatory law enforcement based on race and racial profiling.  Deputies like MARTINEZ have engaged in vile derogatory speech, physical mistreatment of community members, and violations of individual civil rights. The abuses in question were the product of a culture of intolerance within the SBCO Sheriff's Department. This culture is rooted in the deliberate indifference of high ranking County officials, who have routinely acquiesced in the misconduct and otherwise failed to take necessary measures to curtail and prevent it. Despite the repeated and frequent nature of the misconduct and civil rights violations committed by its deputies, high ranking County officials failed to take any or appropriate remedial action. As a result, deputies engaged in repeated and serious acts of misconduct and civil rights violations against citizens living, visiting, and/or traveling in SBCO.

55.     Plaintiff alleges Defendant SBCO was aware of the openly racist conduct of the deputies it employed (such as MARTINEZ), their use of excessive force as set forth herein, the widespread acceptance within the SBCO of unconstitutional actions by deputies as set forth herein, and failed to take any remedial measures, and tolerated, encouraged and ratified the repeated and widespread pattern and practice of these unconstitutional actions.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**FIRST CAUSE OF ACTION – VIOLATION 42 U.S.C. §1983**

**(Unreasonable and Excessive Force)**

**Against Defendants MARTINEZ, COLLAS, and DOES 1-10, Only**

56.   Plaintiff re-alleges and incorporates by reference the information set forth in paragraphs 1 through 55 above, and as though fully set forth herein.

57.   This cause of action is brought pursuant to 42 U.S.C. §1983, for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the U.S. Constitution.

58.   42 U.S.C. § 1983 provides in part:

> "Every person who, under color of any statute,
> ordinance, regulation, custom, or usage of any State or
> Territory subjects, or causes to be subjected, any person
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution
> and laws shall be liable to the party injured in an action
> at law, suit at equity or other proper proceeding for
> redress."

59.   The conduct of Defendants MARTINEZ, COLLAS, and DOES 1-10 deprived Plaintiff of his right to be free of Unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived Plaintiff of his right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

60.   At the time Defendants MARTINEZ and COLLAS shot plaintiff, they were in a situation in which an objective, reasonable police officer would not have used lethal force.  Plaintiff did not represent a threat to their lives or to the lives of others.  Plaintiff was not actively resisting arrest.  Plaintiff was not attempting to evade arrest by flight.  Plaintiff was instead complying with commands given to him.

61.   The shooting was not justified by the purported crime at issue, if any, nor was a warning given by Defendants that deadly force would be used. Defendants

MARTINEZ and COLLAS discharged their firearm(s) negligently, recklessly, intentionally, tortiously and/or with the intent to kill and/or commit serious bodily injury and to violate said Plaintiff's civil rights.

62.     As a direct result of the actions by Defendants MARTINEZ, COLLAS, and DOES 1-10, Plaintiff was severely injured and sustained permanent injuries. Plaintiff seeks general and special damages and attorneys' fees, according to proof.

63.     The aforementioned acts of Defendants MARTINEZ, COLLAS, and DOES 1-10 were willful, wanton, malicious, oppressive and shocking to the conscience thereby justifying the awarding of exemplary and punitive damages as to said defendants.

## SECOND CAUSE OF ACTION – VIOLATION 42 U.S.C. §1983

### (Racial Profiling and Discrimination)

### Against Defendant MARTINEZ and DOES 1-10, Only

64.     Plaintiff re-alleges and incorporates by reference the information set forth in paragraphs 1 through 63 above, and as though fully set forth herein.

65.     This cause of action is brought pursuant to 42 U.S.C. §1983, for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the U.S. Constitution.

66.     Racial profiling and discrimination by law enforcement is also unlawful under 34 U.S.C. §12601 which provides:

> "It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

protected by the Constitution or laws of the United
States."

67.     As set forth above, the conduct of MARTINEZ, both before, during, and
after the incident involving ARI YOUNG, demonstrates a racial animus and bias
against Black individuals.  The text messages, pictures, words, and overall conduct of
MARTINEZ clearly show a discriminatory motive towards ARI YOUNG and other
Black individuals within the community.

68.     On information and belief, ARI YOUNG's race was a motivating factor
in MARTINEZ's use of excessive, unreasonable, and deadly force herein.

69.     As a direct result of the actions by Defendant MARTINEZ and DOES 1-
10, Plaintiff was severely injured and sustained permanent injuries.  Plaintiff seeks
general and special damages and attorneys' fees, according to proof.

70.     The aforementioned acts of Defendant MARTINEZ and DOES 1-10
were willful, wanton, malicious, oppressive and shocking to the conscience thereby
justifying the awarding of exemplary and punitive damages as to said defendants.

### THIRD CAUSE OF ACTION – VIOLATION 42 U.S.C. §1981

### (Violation of Equal Protection Clause)

### Against Defendant MARTINEZ and DOES 1-10, Only

71.     Plaintiff re-alleges and incorporates by reference the information set
forth in paragraphs 1 through 70 above, and as though fully set forth herein.

72.     This cause of action is brought pursuant to 42 U.S.C. §1981, for
violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth
Amendment of the U.S. Constitution.  The Equal Protection Clause of the Fourteenth
Amendment requires that policing, like other government activities, afford all persons
the equal protection of the laws.  The Equal Protection Clause does not permit law
enforcement personnel to target persons based upon race or racial animus.

73.     42 U.S.C. §1981(a) provides:

16

1
2
3
4
5
6
7

> "All persons within the jurisdiction of the United
> States shall have the same right in every State and
> Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal
> benefit of all laws and proceedings for the security
> of persons and property as is enjoyed by white
> citizens, and shall be subject to like punishment,
> pains, penalties, taxes, licenses, and exactions of
> every kind, and to no other.

8
9

74.     On information and belief, ARI YOUNG's race was a motivating factor in MARTINEZ's use of excessive, unreasonable, and deadly force herein.

10
11
12

75.     As a direct result of the actions by Defendant MARTINEZ and DOES 1-10, Plaintiff was severely injured and sustained permanent injuries.  Plaintiff seeks general and special damages and attorneys' fees, according to proof.

13
14
15

76.     The aforementioned acts of Defendant MARTINEZ and DOES 1-10 were willful, wanton, malicious, oppressive and shocking to the conscience thereby justifying the awarding of exemplary and punitive damages as to said defendants.

16
17
18

### FOURTH CAUSE OF ACTION - VIOLATION 42 U.S.C. §1983

### (Municipal Liability – *Monell*)

### Against Defendant SAN BERNARDINO COUNTY, and Does 1-10 Only

19
20

77.   Plaintiff re-alleges and incorporates by reference the information set forth in paragraphs 1 through 76 above, and as though fully set forth herein.

21
22
23
24
25

78.   Defendant SBCO, pursuant to municipal custom, policy or practice, negligently or recklessly hired, trained, supervised, investigated, disciplined, retained, and/or restrained Defendants MARTINEZ, COLLAS, and DOES 1-10 so as to be a moving force in violation of Plaintiff's civil and statutory rights based on the aforesaid conduct alleged herein.

26
27
28

79.   Plaintiff alleges that one or more of the Defendants have been involved in previous episodes of alleged excessive force, and/or deliberate indifference to the lives and wellbeing of detainees/arrestees and alleges that Defendant SBCO

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

condones, endorses actively and/or passively tolerates the deliberate indifference to such lives, use of excessive force, and dishonesty, especially when civil liability may result, in an effort to avoid responsibility, and accountability for the actions of their employees, specifically the uniformed officers of the Defendant SBCO.

80. At the time of the subject incident, Plaintiff alleges on information and belief that Defendant SBCO had in place, and had ratified policies, procedures, customs and practices which permitted and encouraged its police officers to unjustifiably, unreasonably and in violation of the Fourth Amendment to use deadly force against unarmed suspects.

81. Plaintiff alleges on information and belief that said policies, procedures, customs and practices also called for SBCO not to discipline, prosecute, or objectively and/or independently investigate or in any way deal with or respond to known incidents, complaints of excessive force, wrongful shootings of such persons, conduct by police officers of SBCO to fail to objectively and/or independently investigate or in any way properly deal with or respond to claims and lawsuits made as a result of such shootings and misconduct.

82. Plaintiff alleges on information and belief that said policies, procedures, customs and practices called for and led to the refusal of said defendants to properly investigate complaints of previous incidents of excessive force, wrongful shootings of such persons and instead, officially claim that such incidents were justified and proper.

83. Plaintiff alleges on information and belief that said policies, procedures, customs and practices evidenced a deliberate indifference to the violations of the constitutional rights of the plaintiff. This indifference was manifested by the failure to change, correct, revoke, or rescind said policies, procedures, customs and practices in light of prior knowledge by said defendants of their similar incidents.

84. The actions of Defendant SBCO were the cause of, and/or a substantial factor in causing Plaintiff's injuries.

18

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

85.   As a direct result of the actions by Defendant SBCO, Plaintiff was severely injured and sustained permanent injuries.  Plaintiff seeks general and special damages and attorneys' fees, according to proof.

## SUPPLEMENTAL CLAIMS

## FIFTH CAUSE OF ACTION – STATE LAW

### (Assault and Battery – Violation of Penal Code §242 et seq.)

### Against Defendants MARTINEZ, COLLAS, and DOES 1-10, Only

86.   Plaintiff re-alleges and incorporates by reference the information set forth in paragraphs 1 through 85 above, and as though fully set forth herein.

87.   Pursuant to California *Government Code* §910 et seq., Plaintiff timely filed a Claim for Damages with the County of San Bernardino and Plaintiff has complied with this timeline.

88.   Plaintiff invokes the pendant jurisdiction of this Court to hear and determine this claim.

89.   Pursuant to California *Government Code* §815.2, Defendant SBCO is liable for injury proximately caused by an act or omission of its employees within the scope of his/her employment if the act or omission would have given rise to a cause of action against that employee or his personal representative.  Section 815.2's "[v]icarious liability is a primary basis for liability on the part of a public entity, and flows from the responsibility of such an entity for the acts of its employees under the principle of respondeat superior." (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.).

90.   Pursuant to California *Government Code* §820(a), Defendants MARTINEZ, COLLAS, and DOES 1-10 are liable for their individual torts to the same extent as private persons.  No privileges or immunities exist to exonerate these Defendants from their actions herein.

91.   The actions of Defendants MARTINEZ, COLLAS, and DOES 1-10 were in violation of California *Penal Code* §242 et seq.

19

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

92.   Pursuant to California *Code of Civil Procedure* §377.32, Plaintiff seeks only punitive/exemplary damages against Defendants MARTINEZ, COLLAS, and DOES 1-10 through this cause of action.

93.   Said harmful and offensive conduct toward plaintiff was intentionally committed by Defendants MARTINEZ, COLLAS, and DOES 1-10, and was willful, wanton, malicious and oppressive thereby justifying the awarding of exemplary, or punitive, damages as to each of the individual Defendants (Does 1-10) in an amount to be proven at trial.

94.   Said assault and battery was not consented to by Plaintiff, nor was the infliction of serious bodily injury upon plaintiff privileged or immunized by the laws of the State of California.

## SIXTH CAUSE OF ACTION – STATE LAW

### (For Negligence)

### Against All Defendants

95.   Plaintiff re-alleges and incorporates by reference the information set forth in paragraphs 1 through 94 above, and as though fully set forth herein.

96.   Pursuant to California *Government Code* §815.2, Defendant SBCO is liable for injury proximately caused by an act or omission of its employees within the scope of his/her employment if the act or omission would have given rise to a cause of action against that employee or his personal representative.  Section 815.2's "[v]icarious liability is a primary basis for liability on the part of a public entity, and flows from the responsibility of such an entity for the acts of its employees under the principle of respondeat superior."  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.).

97.   Pursuant to California *Government Code* §820(a), Defendants MARTINEZ, COLLAS, and DOES 1-10 are liable for their individual torts to the

same extent as private persons.  No privileges or immunities exist to exonerate these Defendants from their actions herein.

98.  At all times herein mentioned, each of the Defendants owed a duty to Plaintiff to not endanger his life or liberty, to use appropriate police tactics and procedures and to follow an appropriate custom and practice regarding persons in the same situation as plaintiff, and to utilize forces, if necessary, that would be reasonable to an objective officer under the circumstances at the scene.

99.  Said defendants breached their duty of care to plaintiff through their acts and failures to act, thereby proximately causing plaintiff's injuries.

100. As a proximate, legal and direct result of the above mentioned conduct of the defendants, and each of them, Plaintiff severe and permanent injuries.

## **PRAYER**

Wherefore, Plaintiff prays for judgment as follows:

1. For all available general damages according to proof;
2. For all available special damages according to proof;
3. Loss of earnings and earning capacity according to proof;
4. Attorneys' fees according to proof;
5. Costs of suit incurred herein; and
6. For exemplary and punitive damages as to Defendants MARTINEZ, COLLAS, and DOES 1-10, only; and
7. For any other available relief as the court may deem just and proper;

///
///
///
///
///
///

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1

## JURY DEMAND

2      Plaintiff hereby demands a trial by jury on all issues.

3

4

5   DATED: March 20, 2024                    HARRIS GROMBCHEVSKY LLP

6

7                                       BY: _____

8                                            DARREN M. HARRIS
                                             Attorneys for Plaintiff
9                                            ARI AKI YOUNG

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**